IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MAXIS RICHARDS                                                    PLAINTIFF

V.                              CASE NO. 2:25-CV-2098

NATIONAL SECURITY AGENCY                                          DEFENDANT

OPINION AND ORDER

On March 25, 2025, an individual named Eric Pratt submitted a Freedom of Information Act ("FOIA") request to the National Security Agency ("NSA"). He asked for documents that would either confirm or deny that he: (1) was the subject of an agency-operated targeting, surveillance, neuro-monitoring, or disruption program; (2) had been designated a "targeted individual," "test subject," "national security threat," or "unwitting human subject"; or (3) was identified in agency databases or watchlists concerning "psychological operations, behavior modification, non-consensual experimentation, or artificial intelligence training." (Doc. 15-1, pp. 3–4). In addition, he sought documents detailing the NSA's development of "mind control, directed-energy weapons, neural interfacing, remote influence, or behavioral engineering," either in collaboration with other agencies or government contractors. *See id.* at pp. 4–5.

The NSA filed a *Glomar* response[1] on May 1, 2025, stating that the agency was "not able to confirm or deny the existence or nonexistence of these records" under FOIA

---

[1] A "Glomar" response—named after a ship called the *Hughes Glomar Explorer*—is appropriate when an agency determines that disclosing the existence (or nonexistence) of responsive records would "cause harm cognizable under a FOIA exception." *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982) (citing *Phillippi v. CIA*, 655 F.2d 1325, 1330 (D.C. Cir. 1981)). The *Hughes Glomar Explorer* was once the subject of a FOIA request for CIA documents related to a Cold War mission. *See Phillipi*, 655 F.2d at 1329–33.

Exemption 1—which permits the withholding of records in the interest of national defense or foreign relations—and FOIA Exemption 3—which permits withholding if the records are exempted from disclosure by federal statute. *Id.* at p. 8.

It turns out that on April 2, 2025, Eric Pratt, the FOIA requester, had legally changed his name to "Maxis Richards." *See* Doc. 25-2. He did so, however, without informing NSA. Therefore, when "Maxis Richards" attempted to appeal NSA's Glomar response, the agency ignored it—not knowing that Maxis Richards and Eric Pratt were one and the same. Mr. Richards filed the instant lawsuit against NSA on September 5, 2025, accusing it of violating FOIA and requesting both declaratory and injunctive relief. On January 13, 2026, NSA moved to dismiss the case.

On February 19, 2026, the Court entered a Text-Only Order advising the parties that NSA's motion to dismiss would be treated as a motion for summary judgment and requesting supplementary briefing and exhibits.[2] *See* Doc. 17. The Court also set an in-person hearing on the motion for March 19. In short order, Mr. Richards filed a copy of the legal document establishing his official name change, *see* Doc. 25-2, as well as the email he had sent NSA on June 19, 2025, attempting to administratively appeal the Glomar response, *see* Doc. 25-1.

At the motion hearing on March 19, 2026, the Court noted the confusion involving Mr. Richards's name but found that when his *pro se* pleadings were interpreted as liberally as possible and given all benefit of the doubt, it did appear that Mr. Richards had standing to challenge NSA's FOIA response. NSA's counsel requested a bit more time to

---

[2] According to Federal Rule of Civil Procedure 12(d), a court may convert a motion to dismiss into one for summary judgment, provided that "[a]ll parties [have been] given a reasonable opportunity to present all the material that is pertinent to the motion."

supplement the agency's summary judgment briefing, and the Court agreed. NSA then filed a Supplement (Doc. 31) on April 9, and Mr. Richards filed a Response (Doc. 32) on April 21, making the Motion for Summary Judgment ripe for decision.

Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering such a motion, the Court must view the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998).

As previously noted, Mr. Richards's claims are brought under FOIA, a statute that reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citations omitted). Each FOIA exemption must be given "meaningful reach and application" in order to achieve the "workable balance" that Congress has struck "between the right of the public to know and the need of the Government to keep information in confidence." *Id.* (citations omitted). The agency bears the burden of justifying the withholding of material responsive to a FOIA request, and the court reviews the agency's response to the request *de novo*. 5 U.S.C. § 552(a)(4)(B). Summary judgment is appropriate in a FOIA case where the agency's sworn declaration "describe[s]

the justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption[s], and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). This is not a high bar. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.*; *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (noting that an agency's FOIA declaration is to be afforded "a presumption of good faith, which cannot be rebutted by purely speculative claims").

Accompanying NSA's Motion for Summary Judgment is the sworn Declaration of Joy Garrett, Acting Chief of Enterprise Guidance Services for NSA (Doc. 31-5). Ms. Garrett's Declaration explains in detail the agency's reasons for refusing to either confirm or deny the existence of documents and records responsive to Mr. Richards's FOIA requests. Having reviewed both the Declaration and Mr. Richards's Response to the Motion for Summary Judgment, the Court finds it undisputed that his FOIA requests "implicat[e] national security, a uniquely executive purview," and are therefore barred from disclosure under Exemption 1. *Ctr. for Nat'l Sec. Stud. v. DOJ*, 331 F.3d 918, 926–27 (D.C. Cir. 2003). Mr. Richards broadly seeks records relating to NSA's collection of intelligence on himself and information on NSA's intelligence-gathering programs, projects, and methods. Under Exemption 1, the agency need not disclose the existence of records that "an Executive order [requires] be kept secret in the interest of national defense or foreign policy." 5 U.S.C. § 552(b)(1). Under Executive Order 13526 § 1.4(c), information on NSA's "intelligence sources or methods" are exempted from disclosure.

Furthermore, Ms. Garrett provides a detailed, good-faith explanation as to NSA's withholding decision under Exemption 1. Accordingly, summary judgment is appropriate pursuant to Exemption 1.

In the alternative, summary judgment is appropriate under Exemption 3, which applies if a federal statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3)(A)(i). Once again, Ms. Garrett's Declaration lists federal statutes that dictate the agency's Glomar response. They include: (1) the National Security Act of 1959, which exempts from disclosure "the organization or any function of the National Security Agency, or any information with respect to the activities thereof . . . ." 50 U.S.C. § 3605(a); (2) the Espionage Act of 1917, which prohibits the unauthorized disclosure of information concerning the communication intelligence activities of the United States, including the "procedures and methods used in the interception of communications and the obtaining of information from such communications by other than the intended recipients," 18 U.S.C. § 798(b); and (3) the Intelligence Reform and Terrorism Prevention Act of 2004, which protects from public disclosure the federal government's "intelligence sources and methods," 50 U.S.C. § 3024(i). Ms. Garrett's Declaration is not controverted by contrary evidence in the record or evidence of agency bad faith. Therefore, Exemption 3 justifies NSA's Glomar response.

**IT IS ORDERED** that NSA's Motion for Summary Judgment (Docs. 14 & 31) is **GRANTED**. Though Mr. Richards has standing to sue and properly exhausted his administrative remedies prior to suit, his FOIA claims fail on the merits. This case is **DISMISSED WITH PREJUDICE** with a separate judgment to follow.

5

**IT IS SO ORDERED** on this 4th day of May, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE